## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FOUR FIBERS, LLC and
BRETT ROTHFUSS,

     Plaintiffs,                CASE NO. 18-13867

v.                         HON. DENISE PAGE HOOD

KEPS TECHNOLOGIES, INC.,
d/b/a/ ACD.net,

     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF Nos. 76, 77] and DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF No. 78]

## I.    INTRODUCTION

On December 13, 2018, Plaintiffs Four Fibers, LLC and Brett Rothfuss (collectively, "Plaintiffs") filed an action stemming from a business matter dispute between them and Defendant Keps Technologies, Inc., d/b/a/ ACD.net ("Defendant" or "ACD"). On February 25, 2020, Defendant filed a Motion for Partial Summary Judgment, ECF No. 76, and an Amended Motion for Partial Summary Judgment, ECF No. 77 (collectively, "Defendant's Motion for Partial Summary Judgment"), On the same date, Plaintiffs filed a Motion for Partial Summary Judgment, ECF No. 78. Both motions are fully briefed. A hearing was held on July 15, 2020.

For the reasons that follow, Defendant's Motion for Partial Summary Judgment is granted in part and denied in part and Plaintiffs' Motion for Partial Summary Judgment is denied in its entirety. As a result, Counts I-IV remain pending with respect to Plaintiff Four Fibers, Inc. (but not Plaintiff Brett Rothfuss); Count V remains pending with respect to both Plaintiffs; and Defendant's counterclaim against Plaintiff Brett Rothfuss (Count I) remains pending.

## II.    BACKGROUND

ACD is an internet service provider that also engages in telecommunications. ECF No. 86, Ex. C – Dep. of K. Schoen at 11:8-13. Kevin Schoen ("Mr. Schoen") is the CEO of ACD and his brother, Steve Schoen, is the President of ACD. *Id.* at 8:14-25. Plaintiff Brett Rothfuss ("Mr. Rothfuss") is the owner and sole member of Plaintiff Four Fibers, LLC ("Four Fibers").

Sometime around 2010, ACD reached out to Mr. Rothfuss for assistance in procuring business from Verizon Wireless ("Verizon"). ACD sought Mr. Rothfuss's help because of his knowledge of the industry and connections with people at Verizon. ECF No. 86, Ex. B at ¶ 4; ECF No. 86, Ex. C at 38:18-41:18. On October 26, 2011, Mr. Schoen claims he signed and emailed Mr. Rothfuss a version of the Sales Representative Agreement ("2011 SRA") between ACD and Four Fibers. ECF No. 76, Ex. B. That version was not dated or signed by Mr. Rothfuss. *Id.* According to Mr. Schoen, he never received any response to the October 26, 2011 email. ECF

No. 76, Ex. M at ¶ 5.

In December of 2018, Mr. Rothfuss produced an electronic version of the 2011 SRA, dated October 27, 2011, that was signed and initialed by both parties. ECF No. 76, Ex. W.  The first paragraph of the 2011 SRA recites that it is "by and between Four Fibers LLC, a State of Ohio Limited Liability Company ('Representative') and KEPS Technologies, Inc., d/b/a ACD.net and ACD Telecom, Inc., a State of Michigan Company ('Company')."  ECF No. 78, Ex. W at 5.  Mr. Rothfuss signed the 2011 SRA on behalf of Four Fibers as its "authorized representative," using the title "Owner."  *Id.* at 12. Mr. Schoen signed on behalf of ACD as its "authorized representative," using the title "CEO".  *Id.*

Under the 2011 SRA, ACD appointed Four Fibers "as its sales Representative for the Products in the Territory." ECF No. 86, Ex. A at § 2.  "Territory" is defined in the 2011 SRA as "All States and Territories within the United States of America/Any Account." ECF No. 86, Ex. A at § 1(B).  "Products" are defined as "All Fiber Optic, Wireline, and Wireless Telecommunications Products & Services." *Id.* at § 1(A).

The 2011 SRA provided for different commission levels depending upon the product or service that Four Fibers sold.  Fiber optic lit services with monthly recurring payments were subject to a 16% commission; all other products with monthly recurring charges were subject to a 12% commission.  Products with one-

time up-front payments were subject to a 20% commission, as were installation fees. *Id.* at § 9.

Under the 2011 SRA, commissions were due and payable to Four Fibers within 30 days after ACD received payments from the customer. *Id.* at § 11. The term of the 2011 SRA is 30 years, and ACD agreed to pay commissions to Four Fibers "for the life of the Customer actual payments" to ACD. *Id.* at § 11. The 2011 SRA also states that "[t]he waiver or failure of either party to exercise in any respect any right provided in this agreement shall not be deemed a waiver of any other right or remedy to which the party may be entitled." *Id.* at § 15. The 2011 SRA further provides that: (a) it constitutes the "entire agreement between the parties; (b) "[t]here are no written or oral understandings directly or indirectly related to this Agreement that are not set forth herein;" and (c) "[n]o change can be made to this agreement other than in writing and signed by both parties." *Id.* at § 16.

From 2012 through December 31, 2019, Four Fibers helped ACD secure small cell business from Verizon. *See* ECF 86, Ex. C at 88:25-89:7. ACD procured sales from Verizon in the amount of $70,459,869.95. *See* ECF No. 86, Ex. F; *see also* ECF No. 86, Ex. E – Dep. of Steve Schoen at 200:25-201:2. If Four Fibers (Mr. Rothfuss) was responsible for procuring all $70 million in sales from Verizon for ACD, then under the 2011 SRA, ACD would owe Four Fibers sales commissions totaling more than $12 million. *See* ECF No. 86, Ex. E at 143:3-8.

From 2015 through December 2018, Mr. Rothfuss frequently pressed ACD for a written commitment about how and when ACD would pay Four Fibers the commissions owed for the Verizon sales.  Over the years, Mr. Rothfuss stated via email: (1) "I need to sit down with both of you next week and finalize my commission on Verizon Wireless."; (2) "I still have not received my money"; (3) "Agreement on VzW payment. Need in writing."; (4) "I deferred the lump sum in the beginning, to ensure it would not create a financial burden on ACD, and I would start receiving commissions once the project was underway and the cash flow started coming in. Things changed when millions were spent on equipment…"; and (5) "you have no idea of the position this has put me in. How would you feel, and react? If you brought millions of dollars in sales to an organization, increased the valuation of the organization, and not get compensated?"  ECF No. 86, Exs. G, H, I, J, and K. There is no mention of the 2011 SRA in any of the email threads or communications between Mr. Rothfuss and ACD from 2015 through December 2018.

Mr. Schoen acknowledged that ACD owed Four Fibers sales commissions and proposed various ways to make payments.  ECF No. 86, Ex. M.  Mr. Schoen offered Mr. Rothfuss ownership in ACD and proposed selling a portion of ACD's assets to pay Four Fibers.  *See* ECF No. 86, Ex. E at 153:5-8; ECF No. 86, Exs. M and N.  ACD also provided employment wages and medical insurance benefits to Mr. Rothfuss from 2015 through 2018. In 2017 and 2018, Mr. Rothfuss participated

in the 401(k) program that ACD offered to its employees. *See* ECF No. 76, Ex. F.

On or around June 28, 2017, ACD's accounting team created a spreadsheet called, "Payments to Brett Rothfuss & Affiliated Entities Through June 27, 2018." ECF No. 86, Ex. P. This ACD document contains a column for payments that ACD made to "Brett Rothfuss," and also a separate column for payments that ACD made to "Four Fibers." Some payments are specifically called "commissions" on the spreadsheet. *Id.*

About a month later, Mr. Schoen told Mr. Rothfuss that the Verizon projects would not be profitable until the completed network could be sold. He advised Mr. Rothfuss that when there was a sale, ACD would be able to pay additional compensation in the form of a commission. According to Mr. Schoen, the two parties never agreed on the commission. ECF No. 76, Ex. M at ¶ 10. Mr. Schoen further expressed that, if he believed Plaintiffs were expecting commissions in accordance with the 2011 SRA percentages, he would have included those amounts in the bids to Verizon. *Id.* at ¶ 15.

ACD issued various payments to Plaintiffs from January 2013 through October 2018. *See* ECF No. 86, Ex. Q. The last payment, dated October 22, 2018, was referred to as "Sales Commission (Partial Payment)." ECF No. 86, Ex. R. Since 2012, ACD paid commissions to Four Fibers totaling $258,056. *See* ECF No. 86, Ex. P. Mr. Schoen stated that these payments were not made in accordance with the

2011 SRA.  ECF No. 86, Ex. E at 162:17-23; 143:3-8.  Mr. Schoen recognized that compensation beyond what ACD provided Mr. Rothfuss was reasonable.  *See* ECF No. 86, Ex. O.

From July 2018 through December 2018, Mr. Rothfuss proposed multiple commission agreements, in varying percentages, to Mr. Schoen via email.  Plaintiffs and ACD never came to an agreement.  On December 12, 2018, Plaintiffs filed a five-count complaint against ACD: (a) Count I: Breach of Contract; (b) Count II: Violation of the Ohio Sales Representative Commission Act; (c) Count III: Violation of the Indiana Wholesale Sales Representative Commission Act; (d) Count IV: Violation of the Michigan Sales Representative Act; and (e) Count V: Unjust Enrichment.  *See* ECF No. 5.  On January 18, 2019, Defendant filed a counterclaim against Mr. Rothfuss, alleging that he violated the Michigan Uniform Trade Secrets Act, M.C.L. §§ 445.1901 *et seq.*

On February 25, 2020, Defendant moved for partial summary judgment seeking to dismiss Counts I-IV of the complaint as to Brett Rothfuss and Count V of the complaint as to both Plaintiffs. Defendant also sought to invoke two equitable defenses (laches and estoppel) to dismiss Counts I-IV of the complaint as to both Plaintiffs. *See* ECF No. 77. On the same day, Plaintiffs moved for partial summary judgment on Counts I-IV of the complaint. *See* ECF No. 78.

## III.   APPLICABLE LAW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Mr. Rothfuss's Standing to Bring Claims for Breach of Contract and Violation of the Sales Representative Commissions Acts (Counts I-IV)

The first issue before the Court is whether Mr. Rothfuss has standing to enforce the 2011 SRA in his personal capacity. In order for Mr. Rothfuss to have Article III standing as an individual plaintiff, he must show personal injury. *Lujan v. Defenders of Wildlife*, 504 U.S 555, 560, (1992). A sole shareholder of a corporation does not suffer a personal injury when suing "based solely on an injury to the corporation." *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987). Rather, to establish standing, a sole shareholder must suffer "an injury that is 'separate and distinct' from the corporation's injury." *Id.*

Apart from addressing shareholder standing as an Article III issue, Sixth Circuit caselaw also looks to Federal Rule Civil Procedure 17(a)(1) to determine if a person is "the real party in interest." *Williams v. City of Detroit*, 2019 WL 2410719, at *4 (E.D. Mich. June 7, 2019); *see also Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 730–31; *White v. JPMorgan Chase Bank, NA*, 521 F. App'x 425, 428 (6th Cir. 2013). An individual member of an LLC is not a real party in interest when his claims are the same as the LLC's claims. *See Williams*, 2019 WL 2410719, at *5 (individual plaintiffs were not real parties in interest because their claims derived entirely from the LLC's injuries). Unless otherwise agreed, a person making a contract with another as an agent for a disclosed principal does not become a party

to the contract. *Riddle v. Lacey & Jones*, 135 Mich.App. 241, 246 (1984) (quoting 2 Restatement Agency, 2D, § 320, p 67).

Plaintiffs argue that Mr. Rothfuss has standing to prosecute ACD's breach of the 2011 SRA along with co-Plaintiff Four Fibers because he is the sole member of Four Fibers and signed the 2011 SRA in that capacity. Defendant argues that Mr. Rothfuss was not a party to the 2011 SRA agreement in his personal capacity but rather as a representative for Four Fibers. The first paragraph of the 2011 SRA recites that it is "by and between Four Fibers LLC, a State of Ohio Limited Liability Company ('Representative') and KEPS Technologies, Inc., d/b/a ACD.net and ACD Telecom, Inc., a State of Michigan Company ('Company')." ECF No. 78, Ex. W at 5.

The Court finds that Mr. Rothfuss signed the 2011 SRA as an "authorized representative" for Four Fibers, LLC (using the title "Owner"), and there is no indication in the 2011 SRA that Mr. Rothfuss agreed to be held personally responsible for the contract terms and conditions. Mr. Rothfuss therefore signed the 2011 SRA in a representative capacity, not in his personal capacity, and Mr. Rothfuss is not a real party in interest to the 2011 SRA. The Court concludes that Mr. Rothfuss's breach of contract claim in Count I seeks redress for injuries suffered by Four Fibers for ACD's alleged breach of the 2011 SRA. Accordingly, Mr. Rothfuss lacks standing to assert the breach of contract claim in Count I.

Defendant next contends that the claims in each of Plaintiffs' Counts II-IV is asserted equally as to Four Fibers and Mr. Rothfuss with respect to the 2011 SRA: (a) Count II alleges damages for violation of the Ohio Sales Representative Commission Act based upon an alleged breach of the 2011 SRA; (b) Count III alleges damages for violation of the Indiana Wholesale Sales Representative Commission Act based upon an alleged breach of the 2011 SRA; and (c) Count IV alleges damages for violation of the Michigan Sales Representative Commission Act based upon an alleged breach of the 2011 SRA, to which Four Fibers – and not Mr. Rothfuss – is a party.  As Counts II-IV are based upon an alleged breach of the 2011 SRA to which Four Fibers is a party (and Mr. Rothfuss is not) and derive from the same injuries claimed by Four Fibers in Counts II-IV, the Court finds that Mr. Rothfuss lacks standing – and is not a real party in interest eligible – to assert the claims in Counts II-IV.

The Court grants Defendant's Motion for Partial Summary Judgment on Counts I-IV as to Mr. Rothfuss.

**B. Plaintiffs' Claim for Unjust Enrichment (Count V)**

The next issue before the Court is whether Plaintiffs can bring a claim for unjust enrichment in the alternative when they argue an express contract exists. Although parties cannot recover under the theory of unjust enrichment when an express contract exists, Federal Rule of Civil Procedure 8(a)(3) permits pleading an

unjust enrichment claim in the alternative when "there is a dispute between the parties as to whether an express agreement exists." *Solo v. United Parcel Service Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (quoting *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F.Supp.3d 824, 833-34 (E.D. Mich. 2014)). Where there is a dispute over an express agreement, a party can bring claims under both breach of contract and unjust enrichment. *See Terry Bar Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir.1996) (allowing plaintiff to proceed under both breach of contract and unjust enrichment theories where Defendant "kept its options open, and may deny the existence of a contract on remand to the district court").

Defendant argues that there was an express employment contract between ACD and Mr. Rothfuss, from at least 2015 to 2019, that covers the same subject matter set forth in Plaintiffs' unjust enrichment claim (Count V). As Plaintiffs argue, however, that employment contract does not address all of the claims set forth in Count V, specifically the claims that ACD failed to pay Plaintiffs' sales commissions.  And, as ACD acknowledges, there is no express contract between Mr. Rothfuss and ACD concerning payment of commissions. *See* ECF 78, Ex. C at pp. 102:25-103:3. Because Defendant generally contends that there is no agreement for payment of sales commissions to Four Fibers (and Plaintiffs assert that there is), there is a genuine dispute regarding the existence of an express agreement governing how Plaintiffs' sales commissions were to be paid.  The Court finds that, because

there is a dispute over the existence of an express agreement, Plaintiffs may pursue the breach of contract claim and, in the alternative, the unjust enrichment claim.

The Court denies Defendant's Motion for Partial Summary Judgment as to Plaintiffs' unjust enrichment claim (Count V).

### C. Equitable Relief

Defendant raises two equitable defenses (laches and equitable estoppel) that it believes entitle Defendant to summary judgment against ACD with respect to Four Fibers' claims in Counts I-IV. Plaintiffs argue that ACD is not entitled to equitable relief under the clean hands doctrine. The clean hands doctrine allows a court to deny equitable relief when "the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316, 344 (6th Cir. 2018) (quoting *Cyber Sols Int'l, LLC v Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 567 (6th Cir. 2016). *See also Stachnik v. Winkel*, 394 Mich. 375, 387 (1975).

In determining whether ACD comes before the Court with clean hands, the primary factor to be considered is whether ACD sought to mislead or deceive Four Fibers.  Plaintiff has not proffered evidence that Defendant fraudulently induced Four Fibers into making sales to Verizon on its behalf. Although Plaintiffs contend that Defendant breached the 2011 SRA, the Court finds that there is evidence that

ACD has a plausible argument that it was unaware it was bound by the 2011 SRA's terms with regards to the Verizon transactions (namely, that Defendant was not aware that the 2011 SRA had ever been executed by Four Fibers (Mr. Rothfuss)). Plaintiffs have submitted no evidence that Defendant misled or deceived Four Fibers into: (a) signing the 2011 SRA; or (b) working with ACD to make sales to Verizon. The Court therefore finds that the doctrine of clean hands does not bar ACD from seeking equitable relief and now addresses Defendant's laches and equitable estoppel defenses.

### i. Doctrine of Laches

The doctrine of laches is applicable in cases in which there is "an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Innovation*, 912 F.3d at 343 (citing *Dep't of Envt. Quality v. Gomez*, 318 Mich.App. 1, 26 (2016)). A party asserting laches must show: (1) unreasonable delay by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. *See Masck v. Sports Illustrated*, 5 F. Supp. 3d 881, 886 (E.D. Mich. 2014) (citing *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)); *see also Attorney General v. PowerPick Club*, 287 Mich.App. 13, 51 (2010).

Plaintiffs argue that a laches defense is unavailable when a lawsuit is brought within the applicable statute of limitations; in this case, the cause of action stems

from an alleged contractual relationship, so the statute of limitations is six years.

Michigan courts historically have presumed that when a claim is brought within the

statute of limitations, as this claim undisputedly was, the doctrine of laches does not

apply. *Innovation Ventures*, 912 F.3d at 343. In recent years, however, Michigan

courts have re-evaluated the relationship between laches and statutes of limitations.

In 2008, the Michigan Court of Appeals held that "[t]he application of laches can

shorten, but never lengthen, the analogous period of limitations…Thus, laches may

bar a legal claim even if the statutory period of limitations has not yet expired." *Id.*

(quoting *Tenneco Inc. v. Amerisure Mutual Insurance Co.*, 281 Mich.App. 429, 456-

57 (2008)). Accordingly, the Court does not bar ACD's laches defense simply

because Plaintiffs' claims were brought within the statute of limitations period.

The Court does find that Plaintiffs did not unreasonably delay commencing

this suit, nor was ACD prejudiced by the delay. Over the course of many years, Mr.

Rothfuss continuously pressed ACD for a written confirmation about when, and

how, ACD would pay Four Fibers the sales commissions Plaintiffs believed ACD

owed them. *See* ECF No. 78, Exs. G, H, I, J, K, and L. In response to Mr. Rothfuss's

requests: (1) ACD hired Mr. Rothfuss as an employee and made payments to him

through the payroll payments; (2) provided medical benefits to Mr. Rothfuss (*see*

ECF No. 86, Ex. B at ¶ 12); (3) offered Mr. Rothfuss equity ownership in ACD (*id.*

at ¶ 18; Ex. E at p. 152:17-10); and (4) discussed selling assets to pay Mr. Rothfuss.

*See* ECF No. 78, Ex. N. ACD also made several partial payments addressed to both Four Fibers and Mr. Rothfuss, including a $50,000 payment to Four Fibers referred to as "Sales Commission (Partial Payment)" on October 22, 2018. *See* ECF No 78. Exs. Q and R. Viewing the facts in the light most favorable to the nonmoving party (Plaintiffs), the parties were in regular communications regarding commission payments, and the Plaintiffs had reason to believe ACD intended to make commission payments. The Court concludes that Plaintiffs did not unreasonably delay in asserting Four Fibers' rights.

The Court also is not persuaded that Defendant has shown that any delay resulted in prejudice to ACD. Defendant's argument rests on the notion that if ACD had knowledge about the 2011 SRA, it would never have permitted the debt owed to Four Fibers to continue accumulating through transactions structured around that agreement. According to ACD, since the Plaintiff did not mention the 2011 SRA over the course of eight years, transactions between the two parties continued to be structured in a way that would prejudice ACD if the 2011 SRA is enforced. *See* ECF ECF No. 77 at Pg 33-34.  In a light most favorable to Plaintiffs, however, ACD negotiated and signed the 2011 SRA and continuously acknowledged owing payments to the Plaintiffs.  On that basis, a factfinder could find that ACD was aware that it owed commissions to Plaintiffs, and ACD would owe the same amount to Four Fibers regardless of when Plaintiffs sued. For these reasons, the Court finds

that there is a genuine dispute of material fact regarding whether ACD was prejudiced.

### ii. Doctrine of Equitable Estoppel

The doctrine of equitable estoppel operates to preclude the opposing party from asserting or denying the existence of a particular fact (such as the existence of an express contract). Equitable estoppel may arise where: (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on that belief; and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts. *Lakeside Oakland Dev., L.C. v. H & J Beef Co.*, 249 Mich.App. 517, 527 (2002).

Defendant claims that Mr. Rothfuss's silence about the 2011 SRA, coupled with his multiple communications requesting a written confirmation regarding commissions payments, amounted to a waiver. To waive a clause in a legal contract, however, there must be an intentional relinquishment of a known right. *Klas v. Pearce Hardware & Furniture Co.*, 202 Mich. 334, 339 (1918). Viewing the facts in the light most favorable to the non-moving party (Plaintiffs), the evidence does not conclusively show that Four Fibers intentionally waived the existence of the 2011 SRA by asking for commissions or additional written confirmation. To the contrary, there is evidence that Mr. Rothfuss was looking for a written agreement

confirming when and how ACD would pay the sales commissions Plaintiffs' believe ACD owed them.

And, as Plaintiffs argue, a party who is actually "cognizant of all the material facts can claim nothing by estoppel." *Sisk-Rathburn v. Farm Bureau General Insurance Co.*, 279 Mich.App. 425, 429 (2008). In a light most favorable to the nonmoving party (Plaintiffs), the allegedly prejudiced party (ACD) signed the 2011 SRA and had the same access to pertinent information regarding commission payments to Four Fibers, Defendant cannot claim estoppel as did the party to be estopped. *Id.* at 430. The Court finds that the doctrine of equitable estoppel does not apply here.

### iii.    Conclusion

The Court concludes that Defendant is not entitled to equitable relief – or summary judgment – with respect to Four Fibers' claims in Counts I-IV. Defendant's Motion for Partial Summary Judgment against Four Fibers on Counts I-IV is denied.

## V.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Breach of Contract

Plaintiffs contend that there is no genuine dispute of material fact that ACD breached the 2011 SRA.  Under Michigan law, the elements of a breach of contract claim are that: "(1) a contract existed between the parties, (2) the terms of the

contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D. Mich. 2007) (citing *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 718 (E.D. Mich. 2005)).

In order to establish a breach of contract claim under Michigan law, Plaintiffs must first prove that a valid contract existed between ACD and Four Fibers.  An enforceable contract requires mutual assent or a "meeting of the minds" between the contracting parties.  *Ford Motor Co. v. Kahne*, 379 F.Supp.2d 857, 869 (E.D. Mich. 2005) (citing *Martin v. DeYoung*, 232 Mich. 112 (1925)).  To determine whether mutual assent exists, Michigan applies an objective test, looking to the parties' express words and visible acts, not their subjective states of mind.  *Smith v. Chrysler Fin. Corp.*, 101 F.Supp.2d 534, 539 (E.D. Mich. 2000) (citing *Rood v. General Dynamics Corp.*, 444 Mich. 107, 118 (1993)).  "A contract is made when both parties have executed or accepted it."  *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich.App. 543, 549 (1992) (citing *Brown v. Considine*, 108 Mich.App. 504 (1981)).

In a light most favorable to the nonmoving party (Defendant), there is a genuine dispute of material fact whether the 2011 SRA was ever executed or is enforceable.  First, on October 26, 2011, Mr. Schoen signed and emailed a version of the 2011 SRA to Plaintiffs that was not dated or signed by Mr. Rothfuss (or any other person on behalf of Four Fibers). ECF No. 76, Ex. M at ¶ 5.  Although Plaintiffs

claim that Four Fibers signed the 2011 SRA the following day (October 27, 2011), Plaintiffs have not produced written evidence that a 2011 SRA signed by Mr. Rothfuss was sent to ACD at any time prior to December 2018. Mr. Rothfuss does not recall when or how he produced an executed copy of the agreement to ACD before December 10, 2018. ECF No. 76, at 350:12-15. The signed and dated version of the 2011 SRA was not mentioned in or produced in any emails or communications until December of 2018. ECF No. 76, Ex. W. There is no evidence showing how or when Four Fibers communicated the purported acceptance of the 2011 SRA to ACD, at least prior to 2018. According to Defendant, the original version of the 2011 SRA was not transmitted to ACD in 2011. An electronic version of the document surfaced seven years later (in 2018), but the original version vanished before it could be inspected by Defendant. ECF No. 85 at p. 10. All of this evidence could mean that Four Fibers did not execute the 2011 SRA on October 27, 2011, such that there was no executed or enforceable contract.

Second, several of the Plaintiffs' actions could be interpreted as reflecting that Mr. Rothfuss did not treat the 2011 SRA as an enforceable contract. Mr. Rothfuss knew he was required to integrate commissions into proposals to customers, ECF No. 77 at p. 25, but none of the transactions that Plaintiffs assert entitle them to commission payments were structured to include the percentages described in the

2011 SRA.  ECF No. 76, Ex. D at 9.  That evidence could indicate that Plaintiffs did not treat the 2011 SRA as an enforceable contract.

Third, a commission agreement was a repeated topic of conversation between Plaintiffs and Defendant.   Over the course of email correspondence, Mr. Rothfuss continuously asked for a finalized commission agreement in writing, which seemingly would not be necessary if the 2011 SRA was in effect (because the terms of commissions were set forth in that document).  From 2014 through 2018, Mr. Rothfuss proposed to Mr. Schoen multiple different commission agreements varying in percentages via email, but Plaintiffs and ACD never came to an agreement on any of these proposals.   ECF No. 78, Ex. 4 at 102:25-103:3.   During these communications, Mr. Rothfuss never mentioned the 2011 SRA.  Although Plaintiffs characterize those email communications as Mr. Rothfuss's efforts to obtain a written commitment from ACD about how and when it would pay Four Fibers the commission owed under the 2011 SRA, ACD plausibly argues that those emails were the Plaintiffs' efforts to obtain a finalized commission agreement in writing.

The Court finds that the email correspondence and other communications between the parties could be viewed as: (a) efforts to enforce the 2011 SRA (as Plaintiffs claim); or (b) an attempt to finalize a commission agreement because none existed (as Defendant claims).  The Court concludes that there is a genuine issue of material fact regarding whether the 2011 SRA was ever executed or enforceable.

The Court denies Plaintiffs' Motion for Partial Summary Judgment as to their breach of contract claim in Count I.

**B. ACD's Liability for Violation of the Michigan Sales Representative Act, the Ohio Sales Representative Commission Act, and The Indiana Sales Representative Act**

Four Fibers made sales to Verizon in the states of Michigan, Indiana, and Ohio. *See* ECF No. 86, Ex. C at 12:5-18; 88:25-89:7. Under the terms of the 2011 SRA, commission was due and payable to Four Fibers within 30 days after ACD received payments from the customer. ECF No. 86, Ex. A at § 11. Although ACD paid Plaintiffs some commissions, ACD has not paid Four Fibers sales commissions in accord with the terms of the 2011 SRA.

Plaintiffs argue that there is no genuine dispute of material fact that ACD violated the Michigan Sales Representative Act, MCL § 600.2961 (the "Michigan Act"), the Ohio Sales Representative Commission Act, Ohio Rev. Code Ann. § 1335.11, (the "Ohio Act"), and the Indiana Sales Representative Act, I.C. § 24-4-7-0.1, (the "Indiana Act"), when ACD failed to pay commissions to Plaintiffs pursuant to the 2011 SRA. All three Acts impose damages on a "principal" who fails to pay a "sales representative" commission under a contract between the two parties.

As discussed in Section V.A., the Court has determined that a genuine issue of material fact exists regarding the existence and enforceability of the 2011 SRA. Because Plaintiffs cannot at this time (on summary judgment) establish as a matter

of law a requisite element under each of the Michigan Act, the Ohio Act, and the Indiana Act (*i.e.,* that there is a valid and enforceable contract between the parties), the Court concludes that Plaintiffs cannot at this time establish as a matter of law that ACD violated any of those Acts. The Court therefore denies Plaintiffs' Motion for Partial Summary Judgment as to their claimed violations of the Michigan Act, the Ohio Act, and the Indiana Act (Counts II, III, and IV).

## VI.    CONCLUSION

Accordingly, and for the reasons stated above,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment [ECF Nos. 76, 77] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment [ECF No. 78] is DENIED.

IT IS FURTHER ORDERED that Counts I-IV of the Amended Complaint are dismissed with respect to Plaintiff Brett Rothfuss.

IT IS FURTHER ORDERED that Counts I-IV of the Amended Complaint remain pending insofar as they are claimed by Plaintiff Four Fibers, Inc.

IT IS FURTHER ORDERED that Count V of the Amended Complaint remains pending for both Plaintiff Brett Rothfuss and Plaintiff Four Fibers, Inc.

IT IS FURTHER ORDERED that Defendant/Counter-Plaintiff KEPS Technologies, Inc., d/b/a/ ACD.net's Counterclaim (Count I) remains pending against Counter-Defendant Brett Rothfuss.

IT IS ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Court Judge

Entered: May 6, 2022